*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JARED P. BARAGWANATH, by
PAUL B. BARAGWANATH, Personal
Representative,

      Plaintiff-Appellee,

V

AMC SAULT STE. MARIE, INC.,

      Defendant-Appellant,

and

JORY J. AMO, DIVERSIFIED RESTAURANT
HOLDINGS, INC., BUFFALO WILD WINGS,
AMC WINGS, INC., THE AUTO CLUB OF
MICHIGAN, and STACY M. LINKLATER,

      Defendants.

UNPUBLISHED
April 22, 2021

No. 348628
Chippewa Circuit Court
LC No. 17-014945-NO

Before: MURRAY, C.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Plaintiff Paul Baragwanath, as personal representative of the estate of Jared P. Baragwanath (decedent), filed, in part, a dramshop action arising out of the decedent's death in a motor vehicle accident caused by defendant Stacy M. Linklater, who was legally intoxicated at the time. Defendant AMC Sault Ste. Marie, Inc., appeals by leave granted the trial court's order denying AMC's motion for summary disposition. The trial court concluded that a genuine issue of material fact existed regarding whether Linklater was visibly intoxicated when served alcohol at AMC's restaurant. We reverse and remand for entry of judgment in favor of AMC.

## I. BACKGROUND FACTS

Linklater arrived at defendant Buffalo Wild Wings sometime after 4:00 p.m. on December 11, 2015. Her friend, Nicholas Lee Zweifel, met Linklater there, and they stayed at the restaurant for approximately four hours. Linklater consumed four "tall" beers and one regular beer during this time. In addition to Zweifel, Linklater interacted with several other individuals while at the restaurant, including the manager on duty, Michelle Sibbald, and a server, Lauren Winkelman. Several surveillance cameras located around the inside of the restaurant depicted Linklater during her stay at the restaurant. Shortly after Linklater left the establishment in her vehicle, she crossed the centerline of a road while driving and struck decedent's vehicle. He sustained injuries from the accident and died several days later. Linklater's blood alcohol content (BAC) around the time of the accident was 0.181 grams of alcohol per 100 milliliters of blood. AMC held the restaurant's liquor license.

Plaintiff filed a complaint and alleged, in part, a cause of action under the dramshop act (DSA), MCL 436.1801, asserting that AMC was liable for decedent's injuries and death on the basis that the business served alcohol to Linklater while she was visibly intoxicated. AMC moved for summary disposition, arguing that it was not liable under the DSA because there was no evidence that Linklater had been visibly intoxicated at the time that she was served the beers. AMC relied heavily on our Supreme Court's decision in *Reed v Breton*, 475 Mich 531; 718 NW2d 770 (2006), to support its motion. In response, plaintiff contended that the present case was distinguishable from *Reed* and that the testimony of the witnesses and the video surveillance footage created a genuine issue of material fact concerning whether Linklater was visibly intoxicated at the time of service. The trial court agreed with plaintiff's position and denied AMC's motion for summary disposition.

Following the trial court's ruling, AMC filed an application for leave to appeal in this Court, which was denied. *Baragwanath Estate v Amo*, unpublished order of the Court of Appeals, entered August 30, 2019 (Docket No. 348628). AMC then filed an application for leave to appeal with our Supreme Court, which remanded the case to this Court for consideration as on leave granted. *Baragwanath v AMC Sault Ste Marie, Inc*, 505 Mich 1015 (2020). We note that while plaintiff named several defendants in the lawsuit and pursued various theories of liability, the only parties to this appeal are plaintiff and AMC, and the appeal only concerns the dramshop claim.

II. ANALYSIS

AMC argues that the trial court erred by determining that a genuine issue of material fact existed regarding whether Linklater was served alcohol while she was visibly intoxicated. More specifically, AMC maintains that Linklater's BAC, the number of drinks consumed, and the time spent drinking were insufficient as a matter of law to demonstrate visible intoxication. AMC further contends that as a matter of law, Linklater's actions and conduct did not reveal that she was visibly intoxicated. And finally, AMC asserts that the video surveillance footage did not establish visible intoxication as a matter of law and that the trial court erred by finding that the footage alone created a factual dispute as to whether Linklater was visibly intoxicated.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial

judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5).[1] "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).[2] The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

The DSA provides, in relevant part, that "[a] retail licensee shall not . . . sell, furnish, or give alcoholic liquor to an individual who is visibly intoxicated." MCL 436.1801(1).[3] "By

---

[1] MCR 2.116(G)(4) provides:

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

[2] "[T]he rule is well established that a moving party may be entitled to summary disposition as a result of the nonmoving party's failure to produce evidence sufficient to demonstrate an essential element of its claim." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 9; 890 NW2d 344 (2016).

[3] MCL 436.1801(2) provides:

> Except as otherwise provided in this section, an individual who suffers damage or who is personally injured by a . . . visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the . . . visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, has a right of action in his or her name against the person who by selling, giving,

creating a remedy against retail liquor licensees for persons injured by intoxicated tortfeasors, the DSA abrogated the general common-law rule that no cause of action existed for the negligent selling or furnishing of alcohol to an able bodied person." *Reed*, 475 Mich at 537. The DSA was enacted "to discourage bars from selling intoxicating beverages to . . . visibly intoxicated persons and to provide for recovery under certain circumstances by those injured as a result of the illegal sale of intoxicating liquor." *Browder v Int'l Fidelity Ins Co*, 413 Mich 603, 611-612; 321 NW2d 668 (1982). The DSA "provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor to a[n] . . . intoxicated person." MCL 436.1801(9).

A plaintiff seeking to establish "visible intoxication" under the DSA "must present evidence of actual visible intoxication" at the time of service. *Reed*, 475 Mich at 534, 543. "This standard of 'visible intoxication' focuses on the objective manifestations of intoxication." *Id*. at 542. Accordingly, "a person is visibly intoxicated when the person's intoxication would be apparent to an ordinary observer." *Miller v Ochampaugh*, 191 Mich App 48, 58; 477 NW2d 105 (1991). In *Reed*, 475 Mich at 542-543, the Michigan Supreme Court explained:

> While circumstantial evidence may suffice to establish th[e] element [of visible intoxication], it must be actual evidence of the visible intoxication of the allegedly intoxicated person. Other circumstantial evidence, such as blood alcohol levels, time spent drinking, or the condition of other drinkers, cannot, as a predicate for expert testimony, alone demonstrate that a person was visibly intoxicated because it does not show what behavior, if any, the person actually manifested to a reasonable observer. These other indicia—amount consumed, blood alcohol content, and so forth—can, if otherwise admissible, reinforce the finding of visible intoxication, but they cannot substitute for showing visible intoxication in the first instance. While circumstantial evidence retains its value, such (and any other type of) evidence must demonstrate the elements required by § 801(3), including "visible intoxication."

> Plaintiffs here presented no evidence of Breton's visible intoxication at the time he was served at defendant's establishment in response to defendant's motion for summary disposition. The record reflects that all four eyewitnesses saw no signs that Breton was visibly intoxicated. Plaintiffs further relied on two expert toxicologists' expectations that Breton would have exhibited signs of intoxication. But reports discussing Breton's physical statistics and alcohol consumption, coupled with predictions of his impairment, offer only speculation about how alcohol consumption affected Breton that night. Expert post hoc analysis may

or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. In an action under this section, the plaintiff has the right to recover actual damages in a sum of not less than $50.00 in each case in which the court or jury determines that intoxication was a proximate cause of the damage, injury, or death.

demonstrate that Breton was actually intoxicated but does not establish that others witnessed his visible intoxication.

"[P]ermissible inferences must have some basis in objectively observable behavior." *Reed*, 475 Mich at 542 n 12. Examples of conduct that Michigan courts have deemed objective manifestations of intoxication include: slurred speech, staggering, stumbling, driving erratically, difficulty performing basic tasks such as opening a door, loud or boisterous behavior, and glazed or half-closed eyes. See, e.g., *id.*; *Miller*, 191 Mich App at 51-53; *Lasky v Baker*, 126 Mich App 524, 530-531; 337 NW2d 561 (1983).

In this case, plaintiff failed to present evidence establishing a genuine issue of material fact regarding whether Linklater appeared visibly intoxicated at the time that she was served alcohol. First, no witness testified that Linklater displayed visible signs of intoxication. Linklater testified that she did not believe that her behavior before leaving Buffalo Wild Wings was indicative of being visibly intoxicated. In a written statement, Linklater asserted that she did not slur her words, stumble, or otherwise act inappropriately while at the restaurant. Zweifel testified that he did not observe Linklater stagger, miss-step, or fall down when they walked to the restaurant's bathrooms together. Zweifel also claimed that Linklater did not slur her words, fall asleep at the table, or get sick. Although Linklater did spill a drink, Zweifel testified that he did not have the impression at the time that she spilled it as a result of intoxication. Zweifel further testified that he did not believe that Linklater was too intoxicated to drive that evening.[4] Zweifel had interacted with Linklater previously and affirmed that he would have been able to tell whether Linklater was intoxicated based on his prior experiences with her.

Winkelman, who served Linklater, testified that she did not recall seeing Linklater stagger or have a difficult time leaving the restaurant. She further testified that she did not hesitate to continue serving beer to Linklater that night. In a written statement, Winkelman contended that Linklater was polite and quiet, did not act drunk, did not cause a scene, and did not stumble. Winkelman also signed an affidavit averring that Linklater did not appear visibly intoxicated while at the restaurant. Specifically, Winkelman claimed that she did not hear Linklater slur her words, speak incoherently, or have difficulty forming words and that she did not see Linklater fall down, move in an uncoordinated manner, or fall asleep. Manager Sibbald testified that she did not witness anything about Linklater's behavior that night that concerned her regarding Linklater's level of intoxication. Sibbald executed an affidavit and asserted that Linklater did not appear visibly intoxicated at any point during her time in the restaurant. Specifically, Sibbald averred that she did not hear or witness Linklater slur her words, act incoherently, stagger, fall down, or display a lack of coordination.

---

[4] Simply put, Zweifel was wrong as to this particular opinion. Again, Linklater had a BAC of 0.181, and she later pleaded no contest to operating a motor vehicle while intoxicated causing death, MCL 257.625(4).

-5-

Moreover, the video surveillance footage did not depict any outward or visible conduct by Linklater that would indicate that she was intoxicated.[5] The surveillance footage is of very poor quality and does not contain any sound. Much of the footage only shows small portions of Linklater's body, such as her arms. One cannot tell from watching the footage whether Linklater's eyes were ever closed or glazed over. Even when Linklater is visible, the video surveillance footage does not reveal any objective manifestations of intoxication such that Linklater's intoxication would have been apparent to an ordinary observer. The footage contains several instances of Linklater walking through the restaurant and at no point does she stagger, stumble, fall down, or otherwise appear to have difficulty with her coordination. Although Linklater's body is difficult to see while she is seated at the table, she does appear to just sit there calmly without moving around excessively, aggressively, or in an inebriated manner. Other restaurant patrons in the area do not at any point look towards Linklater's table in a way that would suggest that she was being loud or otherwise calling attention to herself.

Linklater does appear to spill a drink in the footage; however, this occurs as she is reaching across the table. It does not necessarily follow that a person who bumps and spills a drink is intoxicated although it could be an indication of intoxication. We are not prepared to conclude that within a four-hour timespan a single spilled drink when reaching across a table constitutes sufficient evidence to create a genuine issue of material fact regarding visible intoxication. Next, the depictions of Linklater touching Zweifel's hair and hands and kissing him was not indicative of intoxication. None of these interactions lasted for more than a few seconds, nor did they appear excessive or out of control. An objective observer would merely think that the two were involved in a romantic relationship.

Linklater teetered slightly and ran into a door jamb when leaving the restaurant about one hour after last being served alcohol. Plaintiff points to this evidence arguing that it was proof of visible intoxication. It does not appear, however, that Linklater ran into the door jamb as a result of being intoxicated. Regardless, while one could infer from this evidence that Linklater was intoxicated and had been for some time before leaving the restaurant, the evidence was insufficient to demonstrate *actual visible intoxication at the time of service*.

Finally, the circumstantial evidence—Linklater's BAC, the number of drinks that she consumed, and her small body size—did not constitute evidence of Linklater's actual visible intoxication. None of this circumstantial evidence "show[s] what behavior, if any, the person *actually manifested* to a reasonable observer." *Reed*, 475 Mich at 542 (emphasis added). Plaintiff failed to demonstrate visible intoxication in the first instance; therefore, this circumstantial evidence was insufficient to create a genuine issue of material fact regarding whether Linklater was actually visibly intoxicated. *Id*. at 543. Simply put, we cannot conclude that contemplation of the identified circumstantial evidence in conjunction with the evidence of the spilled drink and brief intimate gestures suffice to create a triable issue for a jury relative to visible intoxication when being served. Because plaintiff failed to present evidence sufficient to create a genuine issue

---

[5] Plaintiff and AMC each presented DVDs below that contained clips of the surveillance footage taken from inside the restaurant. The DVDs were significantly different from each other. But because both depicted surveillance footage from the same source, we consider the DVDs collectively as the video surveillance footage.

of material fact regarding whether Linklater appeared visibly intoxicated at the time that she was served alcohol, the trial court erred by denying AMC's motion for summary disposition under MCR 2.116(C)(10).

We reverse and remand for entry of judgment in favor of AMC. We do not retain jurisdiction. Having fully prevailed on appeal, AMC may tax costs under MCR 7.219.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Anica Letica